**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Vipul Goel,<br><br>Plaintiff,<br><br>v.<br><br>Boxabl Inc., a Nevada corporation, and Yanni Tassev (a/k/a Iani Tassev),<br><br>Defendant. | Case No.: 0:26-cv-02047 (SRN/SGE)<br><br>**ORDER** |

Jennifer J. Crancer and Emeric J. Dwyer, Chestnut Cambronne PA, 100 Washington Avenue South, Suite 1700, Minneapolis, MN 55401, for the Plaintiff.

Lukas F. Belflower and Peter E. Strniste, Jr., Gordon Rees Scully Mansukhani, 80 S. Eighth Street, Suite 3850 Minneapolis, MN 55402, for Defendant Boxabl.

SUSAN RICHARD NELSON, United States District Judge

Defendant Boxabl Inc. ("Boxabl") moves to dismiss this action for improper venue or, in the alternative, to transfer the case to the District of Nevada. (Mot. to Dismiss [Doc. No. 11].) For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part Boxabl's motion.

## I. BACKGROUND

Defendant Boxabl is a Nevada corporation that manufactures modular, prefabricated homes that fold for transport. (Compl. [Doc. No. 1] ¶¶ 2, 8.) In 2021, Boxabl hired Defendant Yanni Tassev as an investor relations executive whose responsibilities included solicitation and communications with new and potential investors. (*Id.* ¶¶ 11–15.) At the

time, Boxabl shares were only available to purchase through private transactions with interested investors. (*Id.* ¶ 9.) Because of this, potential investors worked directly with Boxabl's investor relations employees to purchase shares. (*Id.* ¶¶ 13–15.) For all relevant times, Mr. Tassev conducted his work exclusively from Nevada. (*Id.* ¶ 3.)

In 2021, Plaintiff, a Minnesota resident, sought to invest in Boxabl and submitted an inquiry through Boxabl's general investor email address. (*Id.* ¶ 23.) Mr. Tassev responded and began working with Plaintiff to sell Boxabl shares. (*Id.* ¶ 24.) In his communications with Plaintiff, Mr. Tassev allegedly represented that his position as a Boxabl employee allowed him to sell securities directly from Boxabl at a discounted price. (*Id.* ¶¶ 16–17.) He also told Plaintiff that he could sell his personal shares of Boxabl stock directly to Plaintiff at a further discounted price. (*Id.*) In reliance on Mr. Tassev's representations, Plaintiff made six transactions to purchase Boxabl shares between October 2021 and December 2022. (*Id.* ¶¶ 32–33, 42, 48.)

The first four transactions occurred between October 2021 and April 2022. (*Id.* ¶ 33.) Three of these transactions were made through Plaintiff's limited liability company Blazing Equity LLC. (*Id.*) The second transaction was made directly by Plaintiff using his own personal funds, whereby Plaintiff purchased 1,598,101 Boxabl shares for $101,000 (the "Second Transaction") and wired the funds directly to Boxabl. (*Id.*) Mr. Tassev allegedly guided Plaintiff through these purchases without issue, and Plaintiff received share certificates and proof of transfer for each of the four transactions. (*Id.* ¶¶ 34, 36.)

Shortly thereafter, Mr. Tassev allegedly represented to Plaintiff that he could sell further discounted shares, but that these would instead come directly from Mr. Tassev's

personal shares. (*Id.* ¶¶ 17, 41.) Relying on Mr. Tassev's representations, Plaintiff made two additional transactions to purchase allegedly discounted Boxabl shares. (*Id.* ¶¶ 42, 48.)

On August 16, 2022, Plaintiff purchased 1,260,000 Boxabl shares for a price of $99,540 (the "Fifth Transaction"). (*Id.* ¶ 42.) To complete the purchase, Mr. Tassev allegedly instructed Plaintiff to wire funds directly to Mr. Tassev's personal investment company Sigmas Power, LLC (d/b/a/ "3NERJI"), which Plaintiff did. (*Id.* ¶¶ 42–45.) The next day, Mr. Tassev provided Plaintiff with proof that the shares had been transferred from 3NERJI to Boxabl's established portal. (*Id.* ¶ 46.)

Then, on December 27, 2022, Plaintiff purchased an additional 2,340,000 Boxabl shares for a price of $184,860 (the "Sixth Transaction"). (*Id.* ¶ 48.) As with the Fifth Transaction, Plaintiff wired the funds to Mr. Tassev's investment company 3NERJI, but this time did not receive proof of transfer or a share certificate. (*Id.* ¶¶ 50–51.) Plaintiff contacted Mr. Tassev and Boxabl inquiring about the shares, but did not receive a response until May 1, 2023, when Boxabl informed Plaintiff that Mr. Tassev had fled the country and was under federal investigation for fraud. (*Id.* ¶¶ 52, 54.)

Boxabl launched an internal investigation to determine the scope of Mr. Tassev's suspected fraud against Plaintiff and other investors. (*Id.* ¶¶ 55, 57.) On December 24, 2024, counsel for Boxabl contacted Plaintiff with a settlement offer (the "Settlement Agreement") and gave Plaintiff until December 31, 2024 to accept. (*Id.* ¶¶ 59–60.) Plaintiff signed the Settlement Agreement on December 30, 2024 and returned it to Boxabl's counsel, but Boxabl did not respond for several months. (*Id.* ¶ 62, 65.) Eventually, Boxabl informed Plaintiff that it would not agree to honor the Settlement Agreement, but instead

offered Plaintiff new settlement terms in its place. (*Id.* ¶ 66.) Plaintiff ultimately made the decision to sue Boxabl and Mr. Tassev.

**II. PROCEDURAL POSTURE**

Plaintiff commenced this action on March 26, 2026, against both Boxabl and Mr. Tassev alleging breach of contract, fraudulent inducement, fraudulent and negligent misrepresentation, promissory estoppel, unjust enrichment, respondeat superior, and violations of Minnesota's consumer protection statutes. (*Id.* ¶¶ 79–172.)

Boxabl moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), arguing that the District of Minnesota is an improper venue for this dispute. (Mot. to Dismiss at 1.) According to Boxabl, Plaintiff's commencement of this action in Minnesota directly contravenes the forum selection clauses in the Settlement Agreement and other contracts related to Plaintiff's purchase of Boxabl shares. (Mem. in Supp. of Mot. to Dismiss [Doc. No. 13] at 2–3.) As an alternative to dismissal, Boxabl moves to transfer this action to the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a) and the aforementioned forum selection clauses. (*Id.*) Boxabl also seeks to recover costs and fees under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. (*Id.*)

For the reasons stated below, the Court denies Boxabl's motions to dismiss and request for fees but grants Boxabl's motion to transfer venue to the District of Nevada.

**III. ANALYSIS**

To determine whether a chosen venue or forum is proper, the Court must engage two distinct inquiries under the framework set forth by the Supreme Court in *Atlantic*

*Marine Construction Co. v. U.S. District Court for the W.D. Tex.*, 571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). In *Atlantic Marine*, the Supreme Court distinguished between venue-based challenges under Rule 12(b)(3) and 28 U.S.C. § 1391, and forum-based challenges under 28 U.S.C. § 1404(a). *In re Union Elec. Co.*, 787 F.3d 903, 906 (8th Cir. 2015) (citing *Atl. Marine*, 571 U.S. at 55–59). In this context, "forum" and "venue" are distinct concepts, with forum being a more general term and venue being "a technical term as defined in 28 U.S.C. § 1391(b)." *Id.* Venue is analyzed "exclusively" as a matter of statutory interpretation. *Id*. Forum, on the other hand, is subject to the *forum non conveniens* framework under 28 U.S.C. § 1404(a) and whether the parties are bound by a valid forum selection clause. *Boyd v. Deadwood Tobacco Co*., 178 F.4th 1132, 1148 (8th Cir. 2026), *reh'g denied*, No. 25-1659, 2026 WL 3334907 (8th Cir. Nov. 4, 2026). If a valid forum selection clause exists, it will receive "controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S at 59–60.

**A. Motion to Dismiss for Improper Venue**

Boxabl argues that the District of Minnesota is not a proper venue under 28 U.S.C. § 1391. (Mem. in Supp. of Mot. to Dismiss at 2.) As the party seeking dismissal, Boxabl bears the burden of proving that the plaintiff's chosen venue is improper. *AT3 Tactical, LLC v. Holosun Techs., Inc.,* No. 26-CV-28 (LMP/SGE), 2026 WL 1481179, at *3 (D. Minn. May 27, 2026). Because the Eighth Circuit has not yet determined whether Rule 12(b)(3) or Rule 12(b)(6) is the appropriate procedural vehicle for a motion to dismiss for improper venue, courts within the Eighth Circuit have determined that the issue need not be adduced where a party moves to dismiss under both Rule 12(b)(3) and Rule 12(b)(6).

*See Rainforest Cafe, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 545 n. 5 (8th Cir. 2003); *see also In re Union Elec. Co.*, 787 F.3d at 905 n. 2 ("We need not decide which subsection of Rule 12 . . . is the appropriate vehicle for dismissal based on a contractual forum selection clause, as [defendant] moved under both subsections."). Under either Rule, the Court construes the facts in the light most favorable to the non-moving party. *In re Operation of Missouri River System Litig.*, 418 F.3d 915, 917 (8th Cir. 2005).

Under 28 U.S.C. § 1391, there are three independent criteria for a proper venue, each of which stands on its own. Under the statute, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); *see also United Nat. Foods, Inc. v. Maciel*, No. CV 24-2610 (JRT/DJF), 2025 WL 1047519, at *3 (D. Minn. Apr. 7, 2025). The Court must determine whether the case falls within one of these three categories. *Atl. Marine*, 571 U.S. at 55–56. If any category applies, venue is proper; if not, the case must be dismissed or transferred. *Id*.

Boxabl argues that venue is improper because a substantial part of the events giving rise to Plaintiff's claims occurred in Nevada. Boxabl argues that it does not maintain any

offices or other physical presence in Minnesota, does not have any employees in Minnesota, and that Mr. Tassev was based exclusively in Nevada during his employment with Boxabl. (Mem. in Supp. of Mot. to Dismiss at 6–7.) Plaintiff counters that § 1391(2) is satisfied here because Boxabl has a registered business address in Minnesota, Boxabl and Mr. Tassev targeted their communications to Plaintiff in Minnesota, and Plaintiff transferred his funds to Boxabl and Mr. Tassev from Minnesota. (Opp. to Mot. to Dismiss [Doc. No. 18] at 8–9.)

At the motion to dismiss stage, the Court accepts well-pled allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

The Court finds that venue is proper under both 28 U.S.C. §§ 1391(b)(1) and (b)(2). First, Boxabl has not disputed the Court's personal jurisdiction over it, and therefore "resides" in this District for the purposes of venue. *See* 28 U.S.C. § 1391(b)(1) (venue is proper if the action is brought in "a judicial district in which any defendant resides."). Under 28 U.S.C § 1391(c)(2), a corporation is considered a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C § 1391(c)(2); *see also AT3 Tactical, LLC.*, 2026 WL 1481179, at *3. Boxabl has not moved for dismissal based on a lack of personal jurisdiction and has therefore waived its defense.[1] *Shannon v. Baxter Healthcare Corp., Hospira*, No.

---

[1] Because Mr. Tassev does not reside in the United States, he "may be sued in any judicial district" in the country. *See* 28 U.S.C. § 1391(c)(3). His inclusion in this action will thus "be disregarded in determining where the action may be brought with respect to other defendants." *Id.*

CIV. 10-1821 JNE JJK, 2011 WL 1260116, at *1 (D. Minn. Apr. 5, 2011); *see also Grand Prairie Foods, Inc. v. Echo Lake Foods, Inc.,* No. 4:23-CV-04027-KES, 2024 WL 51287, at *3 (D.S.D. Jan. 4, 2024) ("Though personal jurisdiction and venue are often interrelated, moving to dismiss for improper venue alone waives any personal jurisdiction defense.").

Second, even if Boxabl had raised a personal jurisdiction defense, venue would still be proper under 28 U.S.C. § 1391(b)(2) because a "substantial" part of the events giving rise to Plaintiff's claim occurred in Minnesota. When analyzing venue under 28 U.S.C. § 1391(b)(2), the Court's "focus must be on relevant activities of the defendant in the forum state [and] not on the effect of those activities on the plaintiff in the forum state." *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (emphasis removed). Plaintiff has sufficiently alleged that Boxabl and Mr. Tassev directed their sales efforts to Plaintiff in Minnesota, sold Boxabl shares to Plaintiff in Minnesota, and engaged in allegedly fraudulent conduct directed at Plaintiff in Minnesota. (Opp. to Mot. to Dismiss at 8–9.) This is sufficient to establish proper venue in the District of Minnesota.

Boxabl also argues that the forum selection clauses in the underlying contracts confirm that venue in this District is improper. Not so. "[A] forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Atl. Marine*, 571 U.S. at 56. As such, dismissal pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6)[2] is improper. *Atl. Marine*, 571 U.S. at 56 ("[A] case filed in a district that falls within § 1391 may not be dismissed under . . . Rule 12(b)(3).").

[2] Boxabl does not offer an alternative basis for its motion to dismiss pursuant to Rule 12(b)(6) and has therefore waived any alternative arguments for dismissal. *Does, 1-11 v.*

**B. Motion to Transfer Venue**

Boxabl alternatively argues that the Court must transfer this action to the District of Nevada pursuant to 28 U.S.C. § 1404(a) and the forum selection clauses in the underlying contracts. (Mem. in Supp. of Mot. to Dismiss at 2.) The Court may transfer the action to another federal district court "[f]or the convenience of parties and witnesses [or] in the interest of justice." 28 U.S.C. § 1404(a). If a valid forum selection clause is found to govern the relationship between the parties, "the clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine*, 571 U.S. at 59. As the party seeking transfer under § 1404(a), Boxabl "bears the burden of proving that a transfer is warranted" due to a valid forum selection clause. *Terra Int'l, Inc. v. Mississippi Chem. Corp*., 119 F.3d 688, 695 (8th Cir. 1997).

When considering a request to transfer venue under § 1404(a), the Court is not limited to a consideration of the pleadings. *Dial Tech., LLC v. Bright H. Networks, LLC,* No. 13-CV-2995 MJD/TNL, 2014 WL 4163124, at *8 (D. Minn. Aug. 21, 2014) (collecting cases). "A court may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents." *Id*. To the extent the Court is required to interpret the agreements, it may do so only insofar as the documents are unambiguous. *See Gorog v. Best Buy Co., Inc.,* 760 F.3d 787, 793 (8th Cir. 2014) ("The interpretation of an unambiguous contract presents a question of law.")

---

*Olson*, No. 25-1892, 2026 WL 2981298, at *9 (8th Cir. Oct. 5, 2026) ("A party waives an issue by failing to 'provide a meaningful explanation of the argument and citation to relevant authority in their opening brief.'" (citing *Cox v. Mortg. Elec. Registration Sys., Inc*., 685 F.3d 663, 674 (8th Cir. 2012))).

Boxabl relies on three categories of documents in support of its motion to transfer venue: (1) the Settlement Agreement [Doc. No. 14-2], (2) the "Stock Purchase Agreement" Plaintiff signed as part of his Second Transaction [Doc. No. 14-3], and (3) the "Governing Documents," which Boxabl alleges includes the Shareholders Agreement [Doc. No. 14-4] and the Articles of Incorporation and Bylaws [Doc. No. 14-5] in effect at the time of Plaintiff's stock purchases. (Mem. in Supp. of Mot. to Dismiss at 7–11.) Each document contains a forum selection clause that identifies Nevada as the exclusive forum for disputes arising out of the contracts. And although Boxabl disputes that the Settlement Agreement is a valid contract, it nonetheless seeks to enforce the forum selection clause within. (*Id*. at 15 n.11.) Plaintiff, on the other hand, argues that the Settlement Agreement is valid, but that the underlying forum selection clause is not enforceable. (Opp. to Mot. to Dismiss at 11–15.) Plaintiff also disputes that the other contracts are applicable because there is no evidence in the record that Plaintiff received them. (*Id*. at 14.)

To evaluate Boxabl's § 1404(a) motion, the Court must engage in a three-step inquiry: "First, the Court must determine whether the District Court of Minnesota is a proper venue, without regard to the forum-selection clause . . . . Second, the Court must determine the validity of the forum-selection clause. If the clause is valid, then third and finally, the Court must weigh a series of factors to determine the enforceability of the clause." *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc*., 88 F. Supp. 3d 1034, 1040–41 (D. Minn. 2015). The Court has determined that venue is proper in the District of Minnesota, so it will now turn to the second part of the analysis—whether the clause or clauses at issue are valid, beginning with the purported Settlement Agreement.

### 1. The Settlement Agreement

To determine the validity of a forum selection clause, the Court must "apply state contract law . . . using the law that would ordinarily govern the contract under the forum's choice-of-law rules or under the applicable law of the contract." *Boyd*, 178 F.4th at 1147. Minnesota follows the framework laid out by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972). *See Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 890 (Minn. 1982); *Rogovsky Enter., Inc.*, 88 F. Supp. 3d at 1042. Under that framework, a forum selection clause is valid if it is "a freely negotiated private . . . agreement, unaffected by fraud, undue influence, or overweening bargaining power." *Id.* (quoting *Bremen*, 407 U.S. at 12). Conversely, a forum selection clause is invalid if either party engaged in "fraud or overreaching." *Id.*

As the party opposing the Motion to Transfer, Plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63.

#### a. Validity of the Forum Selection Clause

The parties do not dispute the following facts. Boxabl sent Plaintiff the purported Settlement Agreement in December 2024. The Settlement Agreement provided that Boxabl would transfer to Plaintiff 3,599,494 shares of Boxabl Series A-1 Preferred Stock, which was "the amount of securities [Plaintiff] thought they were receiving from Tassev's conduct." (Belflower Decl., Settlement Agreement [Doc. No. 14-2] § 2.) The Settlement Agreement also contained a "Governing Law" provision, which provided that:

> This Agreement, and all questions related to its validity, interpretation, performance and enforcement, as well as the legal relations hereby created between the parties hereto, shall be governed by and construed under, and interpreted and enforced in accordance with, the laws of the State of Nevada . . . . **Any action or proceeding by either of the Parties to enforce this Agreement shall be brought in any state or federal court located in the state of Nevada, county of Clark**.

(*Id.* § 7 (emphasis added).) Plaintiff signed the Settlement Agreement and returned it to Boxabl's counsel on December 30, 2024. (*Id.* at 7.)

The parties diverge on whether the Settlement Agreement was a true offer or merely the beginning of a settlement negotiation. Boxabl contends that the Settlement Agreement was a "proposed draft" and "not intended to be a binding settlement offer." (Mem. in Support of Mot. to Dismiss at 15, n.11.) Plaintiff, on the other hand, claims that the Settlement Agreement was a valid offer that he timely accepted. (Compl. ¶ 81.)

Upon the filing of Boxabl's motions, the parties have now taken opposite positions on the validity of the forum selection clause within the agreement itself. Boxabl argues that the forum selection clause is "mandatory and enforceable," despite its position that the Settlement Agreement itself is not a valid contract. (Mem. in Support of Mot. to Dismiss at 16.) Plaintiff in turn counters that the Settlement Agreement *is* a valid contract, but that the forum selection clause is invalid because it was not freely negotiated, as Minnesota law requires. (Opp. to Mot. to Dismiss at 12–15.) Plaintiff also argues that he had "unequal bargaining power" because the Settlement Agreement was offered on a "take-it-or-leave-it" basis, that he was unrepresented by counsel, and that he was at a "clear disadvantage"

because he "had just been swindled out of hundreds of thousands of dollars." (*Id.* at 13–14.)

The Court finds that Plaintiff has not met its burden of establishing that the forum selection clause is invalid.[3] *Dial Tech.,* 2014 WL 4163124, at *8. The record is clear that Plaintiff was under no obligation to accept the terms of the Settlement Agreement as presented. The parties had not yet engaged in litigation, and Boxabl was free to offer settlement just as Plaintiff was free to reject the offer as it was presented. *Duncan v. Blackbird Prods. Grp., LLC*, No. 17-03404-CV-S-BP, 2021 WL 7042377, at *8 (W.D. Mo. Mar. 15, 2021) ("[I]njured parties have 'no obligation to accept or even consider' a tortfeasor's 'proposed settlement offer.'" (citing *United States v. Victory Highway Vill.*, 662 F.2d 488, 497 (8th Cir. 1981))). Further, Plaintiff's claims arise from his attempted purchase of "hundreds of thousands of dollars[']" worth of stock, which Plaintiff sought out directly from Boxabl. (Opp. to Mot. to Dismiss at 14.) While it may be true that Boxabl was the

[3] The Court finds that it may analyze the validity of the forum selection clause without deciding whether the underlying agreement is valid or enforceable. Other courts in this District have reached similar conclusions when considering a motion to transfer venue under a disputed contract. *See Ferguson-Keller Associates, Inc. v. Plano Molding Co., LLC,* 274 F. Supp. 3d 916, 920 (D. Minn. 2017); *Fountain v. Oasis Legal Fin., LLC*, 86 F. Supp. 3d 1037 (D. Minn. 2015). For example, in *Ferguson-Keller*, the court upheld the applicability of a forum selection clause without deciding whether a valid contract existed, despite the plaintiff's contention that the agreement was no longer valid. *Ferguson-Keller,* 274 F. Supp. 3d at 920. If a party "were to challenge the existence or terms of a contract, the case would *first* have to be decided on the merits (determining whether a valid contract existed) and only *then* could the forum-selection clause be applied—that is, once the case was effectively over." *Id.* This would "defeat the very purpose of a forum-selection clause and turn contract law on its head." *Id.* Here, too, it would not benefit the parties or the courts to litigate the merits of this case to its conclusion, only to then determine whether the case was litigated in the proper forum.

more sophisticated party in these transactions, it does not also follow that Plaintiff was *un*sophisticated—he reviewed, signed, and returned the Settlement Agreement to Boxabl.

Having found that the forum selection clause was "unaffected by fraud, undue influence, or overweening bargaining power," the Court now turns to whether the clause is enforceable. *Rogovsky Enter., Inc.*, 88 F. Supp. 3d at 1042.

**b. Enforceability of the Forum Selection Clause**

For a motion to transfer venue, the Court applies federal contract law to interpret the enforceability of the forum selection clause. *Boyd*, 178 F.4th at 1146. A forum-selection clause is "unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *In re Union Elec. Co.*, 787 F.3d at 906 (citing *Bremen*, 407 U.S. at 15). "[T]he party resisting enforcement of the forum-selection clause has the burden to establish that the forum for which the parties bargained should be disregarded." *Federated Mut. Ins. Co. v. Bryan*, No. 17-CV-1136 (WMW/DTS), 2017 WL 7370057, at *3 (D. Minn. Nov. 28, 2017). Even so, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63. Plaintiff's arguments against transfer do not rise to the exceptional circumstances that would warrant overriding the forum selection clause.

Several of Plaintiff's arguments in opposition to the enforceability of the forum selection clause have been foreclosed by the Supreme Court in *Atlantic Marine.* For example, Plaintiff argues that the Court should consider Plaintiff's choice of forum when weighing whether transfer is appropriate. (Opp. to Mot. to Dismiss at 23.) But the Supreme

Court has made clear that a plaintiff's choice of forum merits no weight in the transfer analysis. *Atl. Marine*, 571 U.S. at 63. "[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant— . . . [o]nly that initial choice deserves deference." *Id.* at 63–64. Plaintiff further urges the court to consider the personal burden that would accompany a venue transfer, particularly with respect to travel and "increased costs associated with litigating in a distant forum." (Opp. to Mot. to Dismiss at 20.) Here, too, the Court may not consider arguments related to the parties' private interests in the face of a valid forum selection clause. *Atl. Marine*, 571 U.S. at 64. In fact, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.*

Plaintiff also argues that the "interests of justice" favor keeping this case in this Court. (Opp. to Mot. to Dismiss at 18.) In support, Plaintiff points to Minnesota's strong public policy interest in "adjudicating fraud directed at its residents," and invokes the state statutory fraud claims pleaded in his Complaint. (*Id.*) But "[f]ederal judges routinely apply the law of a State other than the State in which they sit," and the Court sees no reason why the District of Nevada would be unable to apply Minnesota's consumer protection laws to Plaintiff's claims. *Atl. Marine*, 571 U.S. at 67; *see also In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.*, 820 F. Supp. 3d 820, 841 (D. Minn. 2025) ("The Court finds that it can constitutionally apply the law of any state."). Alone, this factor is insufficient to overcome a valid forum selection clause.

The Supreme Court has made clear that the interest of justice is served by holding the parties to their contractual choice of forum. *Atl. Marine*, 571 U.S. at 63. Because

Plaintiff has not established that the forum selection clause of the purported Settlement Agreement should not be enforced, the Court finds that transfer is warranted under 28 U.S.C. §1404(a).

**2. The Stock Purchase Agreement and Governing Documents**

Because the forum selection clause in the Settlement Agreement has been found, for the limited purposes of this motion, to be valid and enforceable, the Court need not determine whether the Stock Purchase Agreement or the Governing Documents are similarly valid and enforceable. The Court notes, however, that the Stock Purchase Agreement was tied explicitly to Plaintiff's Second Transaction, which neither party alleges was fraudulent. And although Plaintiff alleges breach of contract related to the Fifth and Sixth Transactions, neither party identified or produced similar agreements relating to those transactions. (Compl. ¶¶ 118–127.) As for the Governing Documents, Boxabl provided the Court with unsigned documents it sought to enforce over Plaintiff. (*See* Bellflower Decl. Ex. D "Stockholders Agreement" [Doc. No. 14-4] at 28 and Ex. E "Articles of Incorporation" [Doc. No. 14-5].) This is not sufficient, and Plaintiff disputes ever receiving or signing the Governing Documents. (Opp. to Mot. to Dismiss at 14.) At this stage of the proceedings, the record does not support Boxabl's contention that Plaintiff was aware of, or agreed to be bound by, these documents.

**C. Fees and Costs**

Boxabl seeks sanctions under Federal Rule of Civil Procedure Rule 11 and 28 U.S.C. § 1927 to recover the costs and fees incurred in connection with bringing these motions. (Mem. in Supp. of Mot. to Dismiss at 21–22.) Boxabl argues that Plaintiff

knowingly brought this action in an improper forum "in bad faith and without reasonable basis."[4] (*Id.*) Plaintiff argues that he did not file in bad faith because venue is proper in this District, so no sanctions are warranted. The Court agrees with Plaintiff.

Under Federal Rule of Civil Procedure Rule 11, a party may recover fees and costs incurred in responding to "baseless filings." *Blaylock v. Wells Fargo Bank, N.A.,* No. CIV. 12-693 ADM/LIB, 2012 WL 2529197, at *7 (D. Minn. June 29, 2012). A filing is baseless if it "d[oes] not have any basis in fact." *Citizens for a Clean Env't, LLC v. Aitkin Agri-Peat, Inc.,* No. 24-CV-02253 (ECW), 2025 WL 2597347, at *18 (D. Minn. Sept. 8, 2025) (citation omitted). To obtain the requested sanctions, the moving party must move by *separate* motion and "describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11. At the outset, Boxabl did not adhere to these procedural requirements, and its request for sanctions under Rule 11 may be dismissed on this basis alone. *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003) (reversing grant of Rule 11 sanctions because request for sanctions was "procedurally deficient."); *Mehralian v. Parkland Ests. Homeowner Ass'n*, No. 20-CV-855 (NEB/HB), 2020 WL 6144665, at *6 (D. Minn. Aug. 24, 2020), *aff'd sub nom. Mehralian v. Parkland Est. Homeowner's Ass'n*,

---

[4] Boxabl also seeks to rely on the fee-shifting provision in the Settlement Agreement while still maintaining its position that the agreement itself is invalid and unenforceable. (Mem. in Supp. of Mot. to Dismiss at 21–22.) The Settlement Agreement provides that "[i]n the event that either Party seeks to enforce any term of this Agreement as a result of a breach of any term specified herein, the prevailing party shall be entitled to reasonable attorneys' fees and costs as a result of such enforcement of same . . . ." (Settlement Agreement § 8.) The Court need not address the applicability of this provision at this time, as this litigation has not concluded and the enforceability of the underlying Settlement Agreement has not been adjudicated.

No. 20-3178, 2021 WL 1541351 (8th Cir. Feb. 17, 2021) (denying motion for Rule 11 sanctions because "Defendants combined their motion for sanctions with their motion to dismiss in violation of Rule 11(c)(2)."). But even if Boxabl were to file a separate motion, the Court would deny it. Venue was proper in the District of Minnesota, and Plaintiff had sufficient reason to file in this Court. The Court sees no basis for imposing the requested sanctions.

Sanctions under 28 U.S.C. § 1927 are reserved for attorney conduct that "vexatiously" or "unreasonably" multiply the proceedings. 28 U.S.C. § 1927; *see also OarFin Distrib., Inc. v. Nora*, No. 11-CV-863 (PJS/AJB), 2012 WL 13028132, at *2 (D. Minn. July 16, 2012) (§ 1927 sanctions authorized "when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." (citing *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999))). Plaintiff's counsel here has acted in good faith. Plaintiff filed his claims in the District of Minnesota, a proper venue under § 1391(b). And although this case will be transferred to a different court, at no time was counsel's conduct unreasonable or vexatious.

Accordingly, the Court finds that sanctions under Rule 11 and 28 U.S.C. § 1927 are not warranted.

**IV. ORDER**

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Doc. No. 11] is **DENIED**;
2. Defendant's alternative Motion to Transfer Venue [Doc. No. 11] is **GRANTED**; and
3. Defendant's request for fees and costs [Doc. No. 11] is **DENIED**.

Dated: Tuesday, November 17, 2026

*s/ Susan Richard Nelson*
Susan Richard Nelson
United States District Judge